**WILBERT BARK LLP**
Michael E. Lopez, Esq. (SBN 214937)
    mlopez@wilbertbark.com
Joseph R. Wilbert, Esq. (SBN 270792)
    jwilbert@wilbertbark.com
Caroline S. Scala, Esq. (SBN 286495)
    cscala@wilbertbark.com
2 Park Plaza, Suite 820
Irvine, CA 92614
Telephone: (714) 545-3500
Facsimile:  (714) 242-1544

Attorneys for Plaintiff,
AMALFI DECOR, LLC.

# UNITED STATES DISTRICT COURT FOR THE

# CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

| | |
|---|---|
| AMALFI DECOR, LLC., a California Limited Liability Corporation,<br><br>               Plaintiff,<br><br>        v.<br><br>OPULENT TREASURES, INC., a California Corporation; CAROL WILSON, an individual;  and DOES 1 TO 10, inclusive,<br><br>               Defendants. | Case No.<br><br>**COMPLAINT FOR:**<br><br>**1. Declaratory Relief (28 U.S.C. § 2201)**<br><br>**2. Violation of 18 U.S.C. §512(f);**<br><br>**3. Violation of California's Unfair Competition Law (Cal. Bus. & Prof. Code §§ 17200, *et. seq.*);**<br><br>**4. Intentional Interference with Prospective Economic Advantage;**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Amalfi Decor, LLC, alleges:

## JURISDICTION AND VENUE

1.      This court has jurisdiction under 28 U.S.C. § 1331.

    a.  Federal question jurisdiction arises pursuant to 28 U.S.C. § 2201, under which Plaintiff seeks Declaratory Relief regarding the existence, validity, and effect of Defendant Opulent Treasures' purported intellectual property interests, including copyright and trademark.

    b.  Federal question jurisdiction also arises pursuant to 17 U.S.C. § 512(f), under which Plaintiff seeks damages incurred by Defendants' misrepresentations in the course of issuing notifications under 17 U.S.C. 512(c).

2.      This court has jurisdiction over Plaintiff's remaining state law claims under 28 U.S.C. § 1367.

3.      Venue is appropriate in this Court in that all named Defendants reside in this state and at least one Defendant resides in this District.

## NATURE OF ACTION

4.      In this lawsuit, Plaintiff seeks restitution, damages, disgorgement, declaratory relief, and other appropriate relief as a result of and in response to Defendants' conduct in sending out various "takedown" and infringement notifications to third parties who are or were doing business with Plaintiff (the "Notices").

5.      The Notices falsely asserted that various products manufactured and sold by Plaintiff infringed on Defendant's purported intellectual property rights. Plaintiff's products do not so infringe.

6.      Defendants' conduct in sending the Notices just a few days before the Black Friday shopping period was intended to harm, has harmed, and will continue to harm Plaintiff's business by (a) causing third party e-commerce sites to cease

WILBERT BARK LLP
A Limited Liability Partnership

offering certain of Plaintiff's products; (b) causing Plaintiff to lose potential customers and sales; and (c) damaging Plaintiff's business reputation and goodwill through false allegations of intellectual property infringement.

## THE PARTIES

7.      Plaintiff Amalfi Decor, LLC ("Amalfi"), is a California Limited Liability Corporation with its principal place of business at 2771 Plaza del Amo, Suite 804, Torrance, California.  Amalfi is a major manufacturer and seller of high quality home décor products, including chandeliers, candle holders, cake stands, jewelry display boards, serving trays, and cupcake holders.  Amalfi is the successor entity to Platinum Home Furnishings, Inc. ("Platinum").

8.      Defendant Opulent Treasures, Inc. ("Opulent Treasures") is a California Corporation with its principal place of business at 129 Lomita Street, El Segundo, California.  Opulent Treasures is a manufacturer and seller of home décor products, including candle holders, cake stands, and lamps.

9.      Plaintiff is informed and believes that Defendant Carol Wilson ("Wilson") is the Chief Executive Office of Opulent Treasures, and a resident of California.

10.     The true names and capacities of Defendants DOES 1 through 10, inclusive, are unknown to Plaintiff, who therefore sues those Defendants by fictitious names.  Plaintiff will request leave to amend this Complaint by inserting their true names and capacities if and when they are ascertained.  Plaintiff is informed and believes that (a) each of the fictitiously named Defendants was responsible in some manner for the conduct alleged in this Complaint; (b) each was the agent, employee, alter-ego, and/or partner of one or more of the named Defendants; and (c) in doing the things alleged in this Complaint, were acting within the course and scope of that relationship.

///

///

1

## FACTUAL ALLEGATIONS

2    11.    Defendant Opulent Treasures is a manufacturer and seller of various

3 home décor products, among which products are certain cake stands and cupcake

4 displays manufactured in the generic style of neoclassical chandeliers.

5    12.    Plaintiff is informed and believes that Opulent Treasures applied to the

6 United States Patent and Trademark Office ("PTO") for a trademark for at least two

7 of their product designs—a neoclassical-style cake stand with dangling crystals

8 ("the Cake Stand") and a neoclassical-style tiered serving platter suitable for holding

9 cupcakes ("the Cupcake Holder").  Drawings of the two products that were

10 submitted to the PTO are shown below:

11

12

13

14                     

15

16

17

18

19

20    13.    Plaintiff is informed and believes that the PTO rejected Opulent

21 Treasures' applications because the claimed trade designs were highly descriptive

22 and Defendant failed to present evidence sufficient to show acquired distinctiveness.

23    14.    Plaintiff is informed and believes that in or around April 2015, Opulent

24 Treasures obtained registration of the Cake Stand and Cupcake Holder designs on

25 the Supplemental Register of the PTO.  Registration on the Supplemental Register

26 does not provide either a presumption of validity or any exclusive use of the mark.

27

28

15.     In May 2015, Plaintiff—then operating as Platinum Home Designs, Inc.—began manufacturing and selling various neoclassically-themed home décor products, including cake stands and cupcake trays.

16.     On February 11, 2016, an attorney for Opulent Treasures wrote a letter to Plaintiff claiming that the Cake Stand and the Cupcake Holder were "registered on the Principal Register in the U.S. Trademark Office (Reg. Nos. 4,729,340 and 4,729,341)." Opulent Treasures claimed that certain of Plaintiff's products were infringing its "registered" trademarks, and demanded that Plaintiff "permanently discontinue and cease all manufacturing, promoting, distributing, reproducing, displaying, offering for sale, and/or selling" those products.

17.     Opulent Treasures' claims that the Cake Stand and Cupcake Holder were registered on the Principal Register were false, and its letter included documents demonstrating that the two products' designs were, instead, registered on the Supplemental Register.

18.     Plaintiff did not cease manufacturing or selling its products as a result of Opulent Treasures' letter. After discussions with Plaintiff, Opulent Treasures chose not to pursue its allegations of infringement, and Plaintiff continued to sell the products that were the subject of the letter.

19.     On or about November 21, 2016, Opulent Treasures and/or Defendant Carol Wilson, acting as CEO of Opulent Treasures, began sending letters and/or notices (the "Notices") to various online platforms through which Plaintiff sells and markets its products. Such letters and/or notices were sent at least to Wayfair.com (an ecommerce hub), Houzz.com (an ecommerce hub), and Pinterest (an idea-sharing site). Plaintiff is informed and believes that such letters and/or notices were sent to additional third parties as well.

20.     Plaintiff is informed and believes that in the Notices, Defendants falsely claimed that certain of Plaintiff's products infringe on the purported design trademarks for the Cake Stand and the Cupcake Holder.

WILBERT BARK LLP
A Limited Liability Partnership

21.     Plaintiff is informed and believes that in the Notices, Defendants falsely claimed either that Opulent possessed a mark registered on the PTO's Principal Register, or that whatever registration with the PTO that Opulent Treasures did possess gave it exclusive rights to the design trademarks for the Cake Stand and the Cupcake Holder.

22.     Plaintiff is further informed and believes that the Notices included demands that the third parties, including Wayfair.com and Pinterest, remove all links and references to Plaintiff's products or face potential liability.

23.     Plaintiff is further informed and believes that Defendants sent the Notices out alleging infringement against products sold by Plaintiff that are not even cake stands or cupcake holders, but different types of product entirely.

24.     Plaintiff did not itself receive the Notices; the Notices were sent directly to the third parties, including Wayfair.com, Houzz.com, and Pinterest.

25.     On November 22, 2016, Plaintiff received correspondence from Wayfair.com stating that, in reaction to Defendants notice, Wayfair.com was discontinuing the listing of certain of Plaintiff's products while they look into the allegations made by Defendants.

26.     Also on November 22, 2016, Plaintiff received correspondence from Pinterest stating that Defendants had sent a takedown notice under the provisions of the DMCA, asserting copyright protection for the Cake Stand and the Cupcake Holder.

27.     Pinterest is a content-sharing website through which users can upload, save, sort, and manage "pins" – pictures, videos, and other media content.  The "pins" are organized by topics and themes, and are shared between users. Pinterest's CEO has described it as a "catalog of ideas," and it is a potent marketing tool that allows companies to build goodwill as users identify products that they find appealing and share images and/or videos of those products with others.

28.     At the time of Defendants' takedown notice, between 5,000 and 10,000 Pinterest users had "pinned" pictures of Plaintiff Amalfi's neoclassical-style cake stands and cupcake holders which Defendants allege infringe their trade designs. When Pinterest responded to Defendants 'takedown notice, Pinterest sent out messages to every single one of those users, informing them that the images of Plaintiff's products had been taken down because the images potentially violated United States copyright laws.  Pinterest then removed all pictures of the allegedly infringing products from its website.

29.     On November 23, 2016, Plaintiff received correspondence from Houzz.com indicating that, in response to Defendants' Notices, it was removing a number of Plaintiff's products from its website.

30.     Plaintiff is informed and believes that the generically neoclassical ornamentation of the Cake Stand and the Cupcake Holder are not eligible for copyright protection because they are functional and not original.  Plaintiff is further informed and believes that even if the designs were copyrightable, Opulent Treasures is neither the original author of the designs nor an assignee.  Plaintiff is therefore informed and believes that Opulent Treasures had no protectable copyright interest in the design of either the Cake Stand or Cupcake Holder, and that it was aware that it had no protectable copyright interest.

31.     "Black Friday"—the day after Thanksgiving—and the weekend following it is an extremely important shopping period for companies engaged in the sale of goods.  The letters and/or notices sent by Defendants were timed such that Plaintiff's products would be removed from e-commerce websites immediately before this critical period.  As of the date of the filing of this lawsuit, Plaintiff's products remain removed from Wayfair and Houzz, which has resulted in a loss of sales for Plaintiff's products during one of the busiest shopping seasons of the year. Additionally, Plaintiff is informed and believes that Defendants contacted additional

1    e-commerce sites offering Plaintiff's products, and that Plaintiff lost sales over

2    Black Friday weekend for those sites as well.

3         32.    The DMCA notice served on Pinterest by Defendants was timed such

4    that thousands of potential customers who had already expressed interest in

5    Plaintiff's products were informed immediately before the largest shopping

6    weekend of the year that Plaintiff Amalfi's products infringed on another company's

7    copyright.  This severely damaged Plaintiff's reputation both for quality and honesty

8    by implying that the goods were infringing knock-offs.

9         33.    On November 22, 2016, Plaintiff, through its attorneys, filed a counter-

10   notice pursuant to 18 U.S.C. 512(g).  This notice alerted Pinterest that the material

11   removed from its site was disabled as a result of "mistake or misidentification."  If

12   Opulent Treasures does not file suit against Plaintiff within 10-14 business days,

13   Pinterest will be able to restore the "pins" of Plaintiff's products without fear of

14   secondary liability.  Pinterest, however, is under no obligation to do this simply

15   because Plaintiff filed a counter-notice, and in the meantime the removal of

16   Plaintiff's products from Pinterest has hurt Plaintiff's business.

17        34.    Plaintiff is informed and believes that unless forced to stop by court

18   order, Defendants will continue to contact e-commerce sites and other vendors that

19   sell and/or provide opportunities to market Plaintiff Amalfi's products, causing

20   additional damage to Plaintiff's reputation and additional damages in the form of

21   lost sales.

22                          **FIRST CAUSE OF ACTION**

23                            **Declaratory Relief**

24                       **(Against Opulent Treasures, Inc.)**

25        35.    Plaintiff incorporates Paragraphs 1-34 as though fully set forth herein.

26        36.    An actual controversy has arisen and now exists between Plaintiff and

27   Defendant Opulent Treasures, Inc., concerning (a) the existence and/or scope of the

28   intellectual property rights possessed by Opulent Treasures, Inc., if any; and (b)

WILBERT BARK LLP
A Limited Liability Partnership

whether or not any products produced by Plaintiff infringe on Opulent Treasures'
purported intellectual property.  Defendant Opulent Treasures has explicitly accused
Plaintiff of infringement of its purported intellectual property, and Plaintiff believes
that its products do not so infringe, and that Plaintiff has the right to produce and
sell its products without license.

37.     Plaintiff seeks a judicial determination of whether Opulent Treasures
has an enforceable intellectual property right with respect to the Cake Stand and the
Cupcake Holder.

38.     Plaintiff also seeks a judicial determination of whether any purported
intellectual property right that Opulent Treasures holds with respect to the Cake
Stand or the Cupcake Holder (should one be found to exist) is infringed by any of
the products that were identified by Defendants in the Notices that Defendants sent
to various third parties, including but not limited to Pinterest, Wayfair.com, and
Houzz.com.

39.     A judicial determination of the rights and responsibilities of the parties
over the purported intellectual property rights in question is necessary and
appropriate at this time in that the uncertainty over the issues of whether Opulent
Treasures possess any such rights and, if so, whether any of Plaintiff's products
infringe on those purported rights is empowering Defendants to harm Plaintiff's
business by interfering with its relationship with online vendors and marketing
sites,, and is thwarting Plaintiff's ability to effectively respond to Defendants'
wrongful acts.

## SECOND CAUSE OF ACTION

### Violation of 18 U.S.C. §512(f)

### (Against All Defendants)

40.     Plaintiff incorporates Paragraphs 1-34 as though fully set forth herein.

41.     18 U.S.C. § 512(f) bars a person from "knowingly materially
misrepresent[ing]" that "material or activity is infringing" in a takedown notice

WILBERT BARK LLP
A Limited Liability Partnership

1   under the DMCA.  It states that such a person "shall be liable for any damages,

2   including costs and attorneys' fees, incurred by the alleged infringer… as a result of

3   the service provider relying upon such misrepresentation in removing or disabling

4   access to the material or activity claimed to be infringing."

5       42.    As described above, Defendants sent a notification under 18 U.S.C.

6   §512(c) to Pinterest alleging that material on Pinterest – namely pictures of

7   Plaintiffs' products – infringed on Defendants' purported copyrights.  Plaintiff is

8   informed and believes that Defendants submitted similar takedown notices to other

9   websites.

10      43.    The pictures of Plaintiff's products do not infringe on any copyright

11  that Defendants own or administer, if any.  Plaintiff is informed and believes that

12  Defendants knew that the pictures of Plaintiffs' products on Pinterest did not

13  infringe on any copyright that Defendants own or administer.

14      44.    The products of Plaintiff depicted in those pictures do not infringe on

15  any copyright that Defendants own or administer.  Plaintiff is informed and believes

16  that Defendants knew that the products of Plaintiff depicted in those pictures did not

17  infringe on any copyright that Defendants own or administer.

18      45.    Defendants' wrongful claims of copyright protection were solely

19  motivated by a desire to harm Plaintiff's business during the Black Friday shopping

20  season and thenceforth.

21      46.    As a direct and proximate result of Defendants' actions, Plaintiff has

22  been injured substantially and irreparably.  Such injury includes, but is not limited

23  to, the financial and personal expenses associated with responding to the specious

24  claim of infringement, harm to Plaintiffs' free speech rights under the First

25  Amendment, attorneys' fees and costs, reputational harm and the loss of good will,

26  and loss of sales associated with the reputational harms caused by Defendant.

27  ///

28

## **THIRD CAUSE OF ACTION**

### **Violation of California's Unfair Competition Law**

### **California Business & Professions Code Section 17200,** *et seq.*

### **(Against All Defendants)**

47.     Plaintiff incorporates Paragraphs 1-34 as though fully set forth herein.

48.     Defendants' acts as described above constitute fraudulent and unlawful business practices as defined by California Business & Professions Code § 17200 *et seq.*

49.     In particular, Defendants engaged in false, misleading, or deceptive acts by: (1) sending letters and/or notices to Wayfair.com and others misrepresenting that Opulent Treasures had a protectable trademark interest in the generically neoclassical design of the Cake Stand and the Cupcake Holder when in fact no such trademark interest exists; (2) on information and belief, misrepresenting to third parties that the Cake Stand and the Cupcake Holder are registered on the "Principal Register" when in fact the products are only listed on the Supplemental Register; (3) on information and belief, claiming that Opulent Treasures possesses exclusive intellectual property rights to the design of the Cake Stand and the Cupcake Holder, (4) sending out takedown notices under the DMCA that assert copyright protection for Plaintiff's products, when in fact no such copyright protection exists; and (5) asserting claims of infringement against products sold by Plaintiff that are not cake stands or cupcake holders, but different types of product entirely.

50.     The material misrepresentations made by Defendants are part of an intentional campaign to undermine Plaintiff's market position and business reputation, and are unlawful and/or unfair business practices prohibited by the UCL.

51.     The harm to Plaintiff outweighs any possible utility of Defendants' practices and, consequently, Defendants' practices, as set forth fully above, constitute an unfair business act or practice within the meaning of the UCL.

52.     Defendants' practices, as set forth above, have misled the general public in the past and will, if Defendants are not held responsible for their actions, continue to mislead the general public in the future.  Consequently, Defendants' practices constitute an unlawful and unfair business practice within the meaning of UCL.

53.     As a direct and proximate result of such acts of unfair competition, Plaintiff has been injured in fact and has suffered the loss of money in the form of lost sales, both from the direct removal of Plaintiff's goods from vendor websites and as a result of the reputational damage caused by Defendant's conduct.

54.     As a direct and proximate result of such acts of unfair competition, Defendants have wrongfully profited through the elimination of their online competition over the Black Friday holiday, and will continue to so profit. Defendants should be required to disgorge to Plaintiff any and all profits earned as a result of their unlawful and unfair actions, or to provide Plaintiff with any other restitution or relief as the Court deems appropriate.

## FOURTH CAUSE OF ACTION

### Intentional Interference with Prospective Economic Advantage

### Under California Law

### (Against All Defendants)

55.     Plaintiff incorporates Paragraphs 1-34 as though fully set forth herein.

56.     Plaintiff's economic relationships with its online vendors, distributors, retailers, and resellers, including but not limited to Houzz.com and Wayfair.com, provide the probability of future economic benefits for Plaintiff, including providing prospective economic benefits in the form of access to new or repeat customers.

57.     Defendants knew or should have known Plaintiff's economic relationships with its online vendors, distributors, retailers, and resellers provided prospective economic benefits for Plaintiffs.

WILBERT BARK LLP
A Limited Liability Partnership

COMPLAINT
11

58.    Defendants committed intentional acts that were designed, and which Defendants knew were substantially likely, to result in a disruption of Plaintiff's economic relationships with its online vendors, distributors, retailers, and resellers. Those acts were wrongful, and included, without limitation, the sending of the Notices and representation of Plaintiff's products as infringing on Defendants' purported intellectual property.

59.    Plaintiffs' relationship with its online vendors, distributors, retails, and resellers, including but not limited to Wayfair.com and Houzz.com, was disrupted as a result of Defendants' intentional, wrongful acts.

60.    But for the conduct of Defendants, Plaintiff's economic relationship with its online vendors, distributors, resellers, and retailers would have resulted in economic benefits to Plaintiff.

61.    As a result of the aforementioned conduct, Plaintiff suffered damages in an amount to be proved at trial, but which includes at a minimum the loss of customers, potential sales, and good will.

62.    The aforementioned conduct was despicable, wanton, oppressive, malicious, duplicitous, and performed with willful and conscious disregard of Plaintiff's rights and with the intent to disrupt Plaintiff's operations and deprive Plaintiff of its rights.  Accordingly, Plaintiff is entitled to an award of punitive damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment as follows:

1.    For damages from lost sales in an amount that has yet to be ascertained;

2.    For damages from the loss of business reputation and good will in an amount that has yet to be ascertained;

3.    For punitive damages;

4.    For disgorgement of all profits wrongfully obtained by Defendants as a result of the conduct complained of herein;

**WILBERT BARK LLP**
A Limited Liability Partnership

5.     For pre- and post-judgment interest as permitted by law and otherwise;
       and;

6.     For costs and attorney fees as permitted by law and otherwise
       (including under 17 U.S.C. § 512(f)); and

7.     For any such other relief as the Court deems just and proper.

Dated:  November 28, 2016                    WILBERT BARK LLP


                                   By:    */s/ Caroline S. Scala*
                                   Caroline S. Scala
                                   Attorneys for Plaintiff,
                                   AMALFI DECOR, LLC

WILBERT BARK LLP
A Limited Liability Partnership